UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES L. FRANKLIN, JR. and
ADDIE C. FRANKLIN,

Plaintiffs,

v.

BANK OF SPRINGFIELD,

Defendant.

Case No. 25-cv-1278-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the Bank of Springfield's ("Bank") motion to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) for lack of standing and for failure to state a claim (Doc. 37).  Plaintiffs James L. Franklin, Jr. and Addie C. Franklin (collectively, "the Franklins") have responded to the motion (Doc. 41).

This case stems from the Franklins' dissatisfaction with the Bank's foreclosure on mortgaged property at 1460 Hartman Lane, Shiloh, Illinois.  The Bank began a foreclosure proceeding in the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois, in December 2023, in *Bank of Springfield v. Saints International Assemblies et al.*, No. 2023FC000480.  The defendants in that case were Saints International Assemblies ("SIA"), an Illinois not-for-profit corporation that was the mortgagor; City on the Hill, an Illinois not-for-profit corporation that owned the mortgaged property; the Franklins, who may have possessed the mortgaged property personally; and unknown heirs and legatees.

In light of mortgage loan documents in the public record that are essential to the Franklins' case, the Franklins have not and cannot allege a sufficient basis for standing to bring the federal statutory claims asserted in this lawsuit.  The Court will therefore dismiss those

claims with prejudice and will dismiss the remaining state law claims without prejudice to reasserting them in state court.

## I.     Standard for Dismissal for Lack of Standing

Challenges to the Court's subject matter jurisdiction, including standing, are considered under Federal Rule of Civil Procedure 12(b)(1).  Under that rule, a defendant can challenge a court's subject matter jurisdiction in two ways:  a facial or a factual attack on the plaintiff's allegations.  *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020).  "A facial attack tests whether the allegations, taken as true, support an inference that the elements of standing exist."  *Id.*; *see Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003).  A factual attack, on the other hand, tests the existence of the facts underlying the jurisdictional allegations, which are not taken as true like they are under a facial attack.  *Brazile*, 983 F.3d at 279.  In any case, the plaintiff has the burden of proving that subject matter jurisdiction exists.  *LJM Partners, Ltd. v. Barclays Cap., Inc.*, 165 F.4th 552, 565 (7th Cir.), *reh'g en banc denied*, Nos. 23-3109 & 23-3138, 2026 WL 531745 (7th Cir. Feb. 25, 2026); *Lee*, 330 F.3d at 468.

The Bank brings a facial attack on the Franklins' allegation, so the Court accepts them as true except as contradicted by the mortgage loan documents themselves, which the Court considers as explained below.

## II.     Facts Alleged

As a preliminary matter, the Bank's motion to dismiss refers to the mortgage loan documents, which are matters outside the pleadings.  The Court considers those materials because they are acknowledged in the Franklins' pleading and are central to their claims that the Bank violated their rights in connection with the execution and foreclosure of those mortgage loans.  Further, the documents are matters of public record in both the foreclosure proceedings

and in the Franklins' bankruptcy case. *See Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (Rule 12(b)(6) context).

Further, where the Franklins have not challenged the authenticity of the mortgage loan documents and where those documents are materially inconsistent with the Franklins' pleading, the Court will take the documents' statements as true. *Polzin v. Gage*, 636 F.3d 834, 838 n. 1 (7th Cir. 2011) (*per curiam*) (citing *Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007); *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 (7th Cir. 2004)).

Bearing that in mind, the allegations and documents establish the following facts for purposes of the pending motion to dismiss.

In July 2022, SIA executed a mortgage on 1460 Hartman Lane to secure a loan from the Bank. The property was actually titled and owned by the not-for-profit corporation City on the Hill.

In May 2023, the mortgage was modified to provide that the principal amount of indebtedness would not exceed $675,199.00, that the maturity date was extended to February 2024, and that the interest rate was 7.25%. Also in May 2023, a promissory note was executed by SIA that called for repayment of the entire principle amount plus interest not yet paid on February 25, 2024, along with regular monthly payments of all accrued unpaid interest as of the payment dates until then. This arrangement is commonly called a "balloon loan" because small monthly payments are due periodically with a large sum—a "balloon" payment—due all at once at the end of the loan term. SIA was not offered standard mortgage loan terms despite being financially qualified for them.

Plaintiff James Franklin signed all the relevant documents in his capacity as president and

3

authorized agent of SIA, but neither of the Franklins was a party to the mortgage or note in their personal capacities.[1] Nor do either of them own the mortgaged property. Nevertheless, the Franklins personally paid the Bank more than $350,000 in accordance with the terms of SIA's mortgage and note. Because the payments came out of their housing allowance from their employer, it is reasonable to assume they had some possessory interest in the mortgaged property. The Franklins communicated with the Bank to try to avert foreclosure by obtaining a loan with more standard terms.

Despite the Franklins' best efforts to renegotiate more favorable loan terms, the Bank began foreclosure proceedings in December 2023 without legitimate grounds for doing so. It included as defendants SIA, City on the Hill, and the Franklins.[2] The court entered a judgment of foreclosure on October 17, 2024, the property was sold, and the sale was confirmed on June 26, 2025. No party appealed. The court entered an order of eviction on September 25, 2025. Being named as a defendant in the foreclosure proceedings caused damage to the Franklins' credit and to their reputation. They also claim they lost equity, although they had none in the foreclosed property, and suffered emotional distress.

Shortly after the judgment of foreclosure, the Franklins filed for bankruptcy under Chapter 11. They did not list 1460 Hartman Lane as their residence. Before the Bank could obtain an order for relief from the automatic stay, 11 U.S.C. § 362(a), the Franklins voluntarily dismissed their petition.

---

[1] The Franklins allege in the Amended Complaint that they were borrowers on the mortgage loan and that "the nonprofit" (presumably SIA) bore no financial responsibility for the loan. The mortgage documents flatly contradict these allegations, so the Court credits the documents rather than the Franklins' pleading allegation.

[2] The Franklins were proper, permissible defendants because they may have had a possessory interest in the foreclosed property. *See* 735 ILCS 5/15-1501(b)(1).

In another attempt to avert foreclosure, the Franklins, SIA, City on the Hill, and New Jerusalem Pentecost Ministries filed this lawsuit three days before the sale was confirmed and asked the Court to enjoin further foreclosure proceedings.  The Court declined to enter a temporary restraining order.  The Franklins then filed the Amended Complaint omitting the corporate defendants.  The Amended Complaint alleges violations of state and federal law.  The federal laws they claim the Bank violated are the Real Estate Settlement Procedures Act ("RESPA"); the Truth in Lending Act ("TILA"); the Fair Debt Collection Practices Act ("FDCPA"); the Equal Credit Opportunity Act ("ECOA"); and the Home Ownership and Equity Protection Act ("HOEPA").

The Bank asks the Court to dismiss this case because the Franklins do not have standing to sue the Bank under any of these federal statutes.  The Franklins disagree, pointing to the harm they allege to have suffered from the foreclosure.

## III.    Analysis

### A.    Standing to Bring Federal Claims

The Court first turns to standing, a threshold jurisdictional issue.  The doctrine of standing is a component of the Constitution's restriction of federal courts' jurisdiction to actual cases or controversies.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see* U.S. Const. art. III, § 2.  It "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  To have standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Id.* (citing *Lujan*, 504 U.S. at 560-61).  As the party invoking federal jurisdiction, the plaintiff bears the burden of showing he has standing.  *Spokeo*, 578 U.S. at 338.  And at the

pleading stage, the plaintiff must make "sufficient factual allegations of an injury resulting from the defendants' conduct, accepted as true, to state a claim for relief that is plausible on its face." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 588 (7th Cir. 2016).

Injury in fact is the "[f]irst and foremost" requirement to establish standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan,* 504 U.S. at 560). The legally protected interest invaded "need not rise to the level of a right, let alone a constitutional right." *Matushkina v. Nielsen*, 877 F.3d 289, 293 (7th Cir. 2017) (citing *Lujan*, 504 U.S. at 562-63). To be particularized, the injury "must affect the plaintiff in a personal and individual way." *Lujan,* 504 U.S. at 560 n.1. To be concrete, the injury must actually exist, that is, be real and not abstract. *Spokeo*, 578 U.S. at 340.

     1.     General Standing

The Bank asserts that the Franklins' allegations of injury do not describe injuries in fact resulting from its conduct. For example, the Bank claims that harm to their credit status is not concrete or particularized and that no allegations show it was caused by the Bank. The Court disagrees. The Franklins need not plead details at this stage, and the specific harm to their credit rating is one of those details. Further, it is reasonable that the Bank's suing them in an unjustified foreclosure action, even if they were not necessary parties, could have caused such damage. Thus, if there were a federal cause of action for wrongful foreclosure, the Franklins have likely alleged enough harm to satisfy the standing requirement.

However, the federal causes of action in the Franklins' lawsuit are not some kind of general wrongful foreclosure cause of action. They are for violations of specific statutes, under

each of which they must demonstrate standing to sue. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (noting "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek"). Here, they do not.

    2.    <u>The RESPA</u>

The RESPA, 12 U.S.C. §§ 2601-2617, "is a consumer protection statute that regulates the activities of mortgage lenders, brokers, servicers, and other businesses that provide services for residential real estate transactions." *Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1053 (7th Cir. 2018), *overruled on other grounds by Gilbank v. Wood County Dep't of Human Servs.*, 111 F.4th 754 (7th Cir. 2024) (*en banc*); *see* 12 U.S.C. § 2601(b). The Franklins do not specify which part of the RESPA it believes the Bank violated, but they complain that it did not provide disclosures and notices related to the loan and refinance options. The Court assumes for the moment that the RESPA requires the disclosures and notices to a borrower that the Franklins believe were delinquent and that the Bank did not comply with those requirements.

However, the RESPA provides enforceable rights only to borrowers. It says that a defendant who fails "to comply with any provision of this section shall be liable *to the borrower* for each such failure[.]" 12 U.S.C. § 2605(f) (emphasis added). Its guarantees inure to the benefit of a borrower, and in this case the Franklins do not qualify under the common sense meaning of the term: "someone who has *borrowed* money from a lender and promised to pay it back. That means only people who are personally obligated under a loan—those who signed or assumed it—can be 'borrower[s]' under RESPA." *Keen v. Helson*, 930 F.3d 799, 802 (6th Cir. 2019) (finding signatory to mortgage but not to loan was not "borrower"), *cited in Kressel v. NewRez LLC*, No. 25-cv-5904, 2026 WL 221880, at *4 (N.D. Ill. Jan. 28, 2026). Even a person

7

who has made payments toward paying off the loan but who is not legally bound to repay it is not a borrower for purposes of the RESPA. *See Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1057 (7th Cir. 2018). The RESPA grants protectible rights only to borrowers.

Since the Franklins are not personally obligated to pay a loan to the Bank—they did not sign the promissory note in their personal capacities—they are not borrowers and have no rights under the RESPA. This is true even if they used their personal funds toward paying off the promissory note. Consequently, the RESPA provides them no legally protected interest that the Bank could have invaded by its conduct, and they do not have standing to sue the Bank under that statute.

### 3.      The TILA and the HOEPA

The purpose of the TILA, 15 U.S.C. §§ 1601-1667f, is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). The TILA requires a creditor in a consumer credit transaction to make nearly twenty different disclosures, including the annual percentage rate of the credit extended and the aggregate amount of settlement charges and other fees. 15 U.S.C. § 1638(a)(4) & (17); 12 C.F.R. § 1026.18(d) & (e).

The HOEPA, 15 U.S.C. §§ 1602(bb) & 1639, is an amendment to the TILA that aims to provide additional protections for consumers who take out "high-cost mortgages," that is, certain consumer credit transactions secured by the consumer's principal dwelling with interest rates above a named threshold, points and fees assessed above a certain percentage of the transaction amount, or certain fees or penalties for prepayment. 15 U.S.C. § 1602(bb)(1)(A). The HOEPA requires additional disclosures for "high-cost mortgages" beyond those in § 1638. 15 U.S.C.

8

§ 1639(a). It also forbids balloon loans in "high-cost mortgages." 15 U.S.C. § 1639(e).

The Franklins complain that the Bank did not provide them accurate information about the terms of the loan it made to SIA, including specifically the annual percentage rate and the fees associated with the loan. They also complain that the loan contained predatory terms not permitted under the HOEPA.

The Franklins fail to appreciate a basic requirement of the TILA/HOEPA: it applies only to a consumer credit transaction, which is defined as "one in which the party to whom credit is offered or extended is a *natural person*, and the money, property, or services which are the subject of the transaction are primarily *for personal, family, or household purposes*." 15 U.S.C. § 1602(i) (emphasis added). Additionally, the TILA expressly confers rights to disclosures only to "the person who is obligated on . . . a consumer credit transaction." 15 U.S.C. § 1631(a).

The loan at issue in this case is not the result of credit extended to a "natural person" but to a corporate entity, so it is not covered by the TILA/HOEPA. And as noted in the previous section, the Franklins are not obligated under the mortgage loan from the Bank, so they have no right to disclosures under the TILA/HOEPA even if the loan were covered. Therefore, they have no legally protected interest that the Bank could have invaded by its conduct and therefore lack standing to sue the Bank under the TILA/HOEPA. *See Alexander v. Bank of Am.*, No. 08-cv-4948, 2010 WL 152045, at *2 (N.D. Ill. Jan. 15, 2010) (plaintiff who was "not a borrower . . . has no standing to assert any claims under TILA, RESPA or otherwise.").

### 4. The FDCPA

Congress passed the FDCPA, 15 U.S.C. §§ 1692-1692p, in part "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692. It "seeks to protect debtors from 'the use of abusive, deceptive, and unfair debt collection practices by many debt collectors.'"

*Casillas v. Madison Ave. Assocs.*, 926 F.3d 329, 333 (7th Cir. 2019) (citing 15 U.S.C. § 1692(a)).

The debts to which the FDCPA applies are obligations of a consumer, defined as a natural person

(a human being), where the subject of the transaction is for personal, family or household

purposes.  15 U.S.C. § 1692a(3) & (5).

The FDCPA simply does not apply to the Bank's loan to SIA.  SIA is not a consumer

because it is not a natural person, and the Bank's loan to SIA was not an obligation of a

consumer for something to be used for personal, family, or household purposes.  It simply was

not a consumer debt to which the FCDPA applied.  Thus, the Franklins have no standing to sue

over its violation.

5.    The ECOA

The purpose of the ECOA, 15 U.S.C. §§ 1691-1691f, is to end discriminating against

applicants for credit and to prevent discouraging prospective applicants based on race, color,

religion, national origin, sex, marital status, age, or source of income.  15 U.S.C. § 1691(a); 12

C.F.R. § 202.4(a) & (b); *Consumer Fin. Prot. Bureau v. Townstone Fin.*, 107 F.4th 768, 776 (7th

Cir. 2024).  It defines applicants as anyone who applies or may apply to a creditor directly for

credit or indirectly an increase of the limit of preexisting credit.  15 U.S.C. § 1691a(b); 12 C.F.R.

§ 202.2(e); *Moran Foods, Inc. v. Mid-Atl. Mkt. Dev. Co., LLC*, 476 F.3d 436, 441 (7th Cir. 2007)

(strictly construing "applicant").  And it provides a cause of action for "aggrieved applicants."

15 U.S.C. § 1691e(a).

As with the FDCPA, the ECOA confers no protectible interest on the Franklins because

they have not applied for credit from the Bank in connection with the loan to SIA and the

foreclosure on 1460 Hartman Lane.  Nothing in their Amended Complaint reasonably suggests

that they, rather than SIA, applied for credit from the Bank or that the Bank discouraged them

10

from doing so because of any of the prohibited considerations. Without any allegation that they, as individuals, suffered some injury as an applicant or potential applicant to the Bank for credit, they have no standing to sue under that statute.

The Franklins argue that the Bank's inclusion of them as defendants in the foreclosure proceeding shows that they are the real parties in interest and therefore have standing to sue. As noted above, they were likely joined in the foreclosure proceeding because of a potential possessory interest, and they may have had standing to object to the foreclosure in that proceeding or to appeal the foreclosure judgment. But that does not give them standing to sue for the federal causes of action they bring in this lawsuit.

In sum, because the Franklins have not pleaded allegations which, if true, demonstrate they have standing to sue the Bank for the alleged violations of federal statutes, the Court must dismiss those causes of action for lack of standing. Having disposed of the Franklins' federal claims on standing grounds, it need not address whether they have failed to state claims under those statutes for purposes of Federal Rule of Civil Procedure 12(b)(6).[3]

B.      Remaining State Law Claims

The Franklins brought this case asserting original federal question jurisdiction under 28 U.S.C. § 1331(a). The Court had, and continues to have, jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(a), which extends federal jurisdiction to all claims that are sufficiently related to the claims on which original jurisdiction is based so as to be part of the same case or controversy. Since the Court has disposed of the Franklins' federal claims, its continuing jurisdiction rests entirely on § 1367(a).

---

[3] If the Court has erred by dismissing these claims for lack of standing, it would have dismissed them for failure to state a claim.

However, 28 U.S.C. § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  A district court has broad discretion in deciding whether to decline jurisdiction over state law claims when no original jurisdiction claims remain pending.  *RWJ Mgmt. Co. v. BP Prods. N. Am.*, 672 F.3d 476, 478 (7th Cir. 2012).  The district court should consider judicial economy, convenience, fairness and comity.  *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  "[W]hen the district court dismisses all federal claims before trial, the usual and preferred course is to remand the state claims to the state court unless there are countervailing considerations."  *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1043 (7th Cir. 1998) (citing *Wright*, 29 F.3d at 1251).  This is true even when the decision is on the eve of trial so long as the district court has not made a "substantial investment" of time in the litigating untried claims.  *RWJ Mgmt.*, 672 F.3d at 478.

The Court has considered the relevant factors and finds that it is appropriate to decline to exercise supplemental jurisdiction over the remaining state law claims.  The Court firmly believes that Illinois state courts are far better equipped to hear cases that turn on the interpretation and application of state law between citizens of Illinois.  As a matter of comity and efficiency, the privilege of hearing such cases should rest with the state court system.  Furthermore, it would be no less convenient for the Franklins to proceed in state court than in federal court—in fact, it may even be more convenient considering their proximity to the St. Clair County courthouse compared to the federal courthouse in Benton, Illinois.  The Court sees no unfairness that would result from litigation in a state forum.  For these reasons, the Court declines to exercise jurisdiction over the Franklins' claims.

**IV.    Conclusion**

For the foregoing reasons, the Court:

- **GRANTS** the Bank's motion to dismiss (Doc. 37);

- **DISMISSES** the Franklins' claims for violation of the RESPA, the TILA, the FDCPA, the ECOA and the HOEPA pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing.  These dismissals are **with prejudice** to the Franklins but without prejudice to SIA should it ever decide to bring similar claims;

- **DISMISSES** the Franklins' state law claims **without prejudice** for lack of jurisdiction under 28 U.S.C. § 1367(c)(3); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  August 6, 2026**

**J. PHIL GILBERT**
**DISTRICT JUDGE**

13